LEMMON, Justice.
This is an action to require defendants to pay the City’s policemen additional wages which are allegedly due under the 1928 amendment to La.Const.Art. 14, § 25 (1921).[1]
*930 The trial court dismissed plaintiffs’ petition on defendants’ exception of no cause of action, and that judgment was affirmed by the court of appeal. 409 So.2d 411. We granted certiorari to review the correctness of those decisions. 412 So.2d 1095.
In their petition (which is the only thing a court may consider when ruling on an exception of no cause of action), plaintiffs alleged that the City collected the avails of the property tax as constitutionally required and used the collections to make an annual lump sum payment to policemen, over and above their regular salary, for over 40 years until January 1, 1971. Plaintiffs further allege that the City violated the 1928 constitutional amendment when it continued to collect the avails of the property tax after January 1, 1971, but discontinued payment of the proceeds in an annual lump sum payment which was over and above the regular salary of the policemen, using the proceeds of the collection instead to pay part of the regular salaries of the policemen.[2]
In this court, plaintiffs contend that the City after 1971 effectively reduced policemen’s salaries without following Civil Service procedures. They argue that the City prior to 1971 paid policemen a regular salary every other week, according to a salary schedule of the Civil Service Commission, and an additional lump sum bonus once a year on a per capita basis from the avails of the tax collections, while the City after 1971 used the proceeds of the tax collections to pay part of the policemen’s regular salary, thereby effecting a reduction in the regular salary. (There were no factual allegations in the petition to support this argument.) In essence, plaintiffs argue that the City is obligated to use the general fund to pay the policemen’s regular salaries, as fixed by the Civil Service Commission in the overall salary schedule for City employees, and to use the avails of tax collections exclusively for the purpose of “an increase” in (meaning an amount over and above) the regular pay of policemen.
On the other hand, defendants contend that the 1928 constitutional amendment contemplated a one-time increase, which the policemen received in 1929, and that the City’s only present obligation is “to appropriate from the general fund for the support of the Police and Fire Department an amount not less than the amount of support given to the department . . . prior to the time the Amendment became effective”. While admitting that they changed their method of payment in 1971, defendants argue that the new method of payment does not violate the provisions of the 1928 amendment, because the tax proceeds have been used every year to pay policemen an amount in excess of their 1928 salaries.
The Legislature, in proposing the 1928 constitutional amendment, clearly intended to enact a tax which would be collected every year. The Legislature also recognized that policemen and firemen at that time did not receive adequate wages and accordingly dedicated a portion of the annual proceeds of that tax for the purpose of providing these particular employees with “an increase in the pay”. Certainly for the *931 first year (and arguably for every year until the tax is repealed), the tax was intended as a source of funds to pay these particular employees an amount of pay over and above the amount of their salaries listed in the overall salary schedule for all City employees payable out of the general fund. The tax proceeds in the first year were used precisely in this manner, and (according to plaintiffs’ petition) the tax proceeds were used each year thereafter, until 1971, to pay these particular employees an amount over and above their regular salary which was fixed by the agency charged with the responsibility of fixing salaries of City employees and was payable out of the general fund.
The key issue is whether the 1928 constitutional amendment, by requiring use of a portion of the tax proceeds for an increase in policemen’s salaries, correspondingly required the City to use the general fund to pay all of the regular salary for policemen as fixed in the overall salary schedule for City employees. This determination depends upon the intent of the Legislature in proposing the 1928 constitutional amendment and of the people in adopting the amendment. It is highly unlikely that the Legislature and the voting citizens intended for the City, for example, to use the tax proceeds to give policemen and firemen cost of living increases in regular salary while using the general fund to provide simultaneously a similar increase to other City employees.[3] It is much more likely that the Legislature and the voters intended that an overall general increase (or decrease) in salaries for all City employees in a particular year would affect only the regular salaries payable out of the general fund and that the avails of the annual tax collections for each year would be used as a supplement to that base pay.[4]
However, the fact that the City after 1971 discontinued paying the tax proceeds to policemen in the form of an annual bpnus and began paying it as part of a biweekly salary does not necessarily mean that the City reduced policemen’s base pay for the purpose of avoiding payment to policemen of the amount generated by the annual tax as an “increase” over and above their regular salaries payable out of the general fund, thereby releasing a proportionate amount of the general fund for other purposes.[5] The overall pay plan for policemen after 1971 may include the tax proceeds as a supplemental increase in regular salary over the amount which otherwise would be base pay. Other possibilities also come to mind, but the present posture of this case prevents a proper determination of whether there has been a violation of the 1928 constitutional amendment.
How regular salaries of firemen, policemen and other City employees were fixed in 1928 and in the period between 1928 and 1971 is not shown by plaintiffs’ petition. Defendants, choosing to proceed by means *932 of an exception of no cause of action, were precluded from introducing depositions, affidavits or other evidence on this and other key points.[6] Moreover, as to the period after 1971, the only factual allegation of plaintiffs’ petition is that the method of paying the regular salary of policemen was different than the pre-1971 method. We are unable to determine, on the scant allegations of this petition, whether the new method of payment violates the provisions of the 1928 constitutional amendment, because we have not been furnished with sufficient information.
We therefore conclude that plaintiffs have not alleged facts which necessarily establish a violation of the 1928 constitutional amendment, and in that respect plaintiffs have failed to state facts constituting a cause of action. Thus, we cannot say that the lower courts erred in maintaining the City’s exception of no cause of action. However, the lower courts did err in not affording plaintiffs an opportunity to amend their petition and to supplement the factual allegations in an attempt to remove the grounds for the objection and thereby state a cause of action. C.C.P. Art. 934. We therefore amend the judgment to allow this opportunity to file a supplemental and amended petition. If the plaintiffs avail themselves of the opportunity to present additional allegations of fact which more properly place the issue before the court for adjudication, then defendants may test the sufficiency of the amended petition by another exception of no cause of action or by a motion for summary judgment (at which either party may file affidavits, depositions or other appropriate documents in order to complete the record for an informed disposition of the legal issue presented).
For these reasons, the judgment of the lower courts is affirmed insofar as the judgment maintains the exception of no cause of action, but the judgment is amended so as to give plaintiffs' 30 days from the date this judgment becomes definitive to attempt to remove the grounds of the objection by filing a supplemental and amended petition alleging additional facts.
BLANCHE, J., concurs and assigns reasons.
MARCUS, J., concurs in the result.
DIXON, C. J., and DENNIS, J., dissent with reasons.

. La.Const.Art. 14, § 25 (1921), as amended in 1928, was continued in effect as a statute by La.Const.Art. 14, § 16(1974). The 1928 constitutional amendment provided:
“In addition to such other taxes as the City of New Orleans is now, or may be hereafter, authorized to levy, said City shall levy annually a special tax, not exceeding three mills on the dollar, on all taxable property in said City, as assessed and valued for city taxation purposes. The avails of said special tax are hereby dedicated to the maintenance of a double platoon system in the Fire Department and a triple platoon system in the Police Department of said City, and for an increase in the pay of the officers and men in said departments, respectively, and shall be used by said City exclusively for said purposes, respectively, according to such apportionment as said City may make from time to time; provided, however, that one-half the avails of said tax in excess of two mills shah *930 be used exclusively for the purpose of an increase in the pay of officers and men in the Fire Department of said City, while the other half shall be used exclusively for the purpose of an increase in the pay of officers and men in the Police Department of said City." (Emphasis supplied.)

. The pertinent allegations of plaintiffs’ petition are as follows:
“VI. Prior to January 1, 1971, the avails of said property tax were paid to those individuals employed as policemen by the New Orleans Police Department in a lump sum, annually, which sum was over and above the regular salary of said policemen.
“VII. Since January I, 1971, the City of New Orleans, the City Civil Service Commission of New Orleans, and/or the New Orleans Police Department have used the avails of said property tax as a contribution to the regular salary of the individuals who are, have been, or may be employed as policemen, thus depriving said individuals of the additional pay which was intended under the Louisiana Constitution of 1921 and 1974. Accordingly, defendants have been and continue to be in violation of the provisions of the Louisiana Constitution of 1921 and 1974.”

. In Ziemer v. City of New Orleans, 195 La. 1054, 197 So. 754 (La.1940), the court held that:
“In our opinion the amendment contemplated that the City would continue to maintain the department in the same manner as it had before and would use the funds derived from the tax to increase the services of the department and the pay of the men.” (Emphasis supplied.) 197 So. at 758.
The court accordingly affirmed a judgment which ordered the City to appropriate out of the general fund a sum adequate to maintain the fire department and to segregate the proceeds of the tax collections for the purpose of increasing the pay of firemen. The court thus rejected the City’s contention that it had no duty to appropriate out of the general fund an amount adequate to maintain the fire department.

. This reasoning also answers the City’s argument that the Legislature in 1928 could not have intended that all future wage increases, once granted, could never be reduced. The City’s power to implement a general reduction in the regular salaries of City employees is not at issue. What is at issue is the City’s power to effect a special reduction in the regular salaries of particular employees solely because those employees receive a salary supplement from a source other than the general fund.

. The fact that the policemen did not complain (insofar as this record shows) of the discontinuation of the annual bonus until 1980 suggests that the change in 1971 may have been a mere revision (of which both sides must have been aware) in the method of payment of all wages for each year.

. This case illustrates the problems created when a party attempts to present a defense by means of an exception of no cause of action, rather than by evidence at a trial on the merits or by a motion for summary judgment. When a petition is incomplete or vague, the more appropriate procedure is to utilize discovery (or other exceptions) and then present the issue clearly in a motion for summary judgment.